IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ROBERT A. JEFFERSON, JR.,
       Petitioner,

vs.                                     Case No.: 4:04cv416/MMP/EMT

JAMES R. McDONOUGH,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Docs. 11, 12, 26).  Petitioner filed a reply (Doc. 15).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties.  On March 27, 2002, Petitioner entered a plea of nolo contendere to the following charges: sexual battery involving serious physical force, robbery, fraudulent use of a credit card, credit card forgery, and petit theft (Doc. 12, Exs. A, B).  Pursuant to a written plea agreement, Petitioner was sentenced to concurrent terms of nineteen years imprisonment for the sexual battery, fifteen years for the robbery, and five years for each count of credit card fraud; restitution; DNA blood draw; and designation as a sexual

predator (*id.*, Ex. B).  Petitioner was given credit for time served of 574 days (*id.*).  On March 28, 2002, the trial court entered an order declaring Petitioner to be a sexual predator (*id.*, Ex. C). Petitioner did not appeal the judgment or sentence (Doc. 1 at 2).  On February 19, 2003, Petitioner moved for postconviction relief pursuant to Fla. R. Crim. P. 3.850 in the Circuit Court for Leon County, Florida (Doc. 12, Ex. D).  The trial court held a hearing on Petitioner's motion (*id.*, Ex. E) and denied Petitioner's motion in a written order on January 8, 2004 (*id.*, Ex. H).  Petitioner appealed to the Florida First District Court of Appeal (First DCA), and the appellate court affirmed per curiam without opinion on September 8, 2004, with the mandate issuing on September 24, 2004 (*id.*, Ex. K).  Jefferson v. State, 882 So. 2d 388 (Fla. 1st DCA Sept. 8, 2004) (Table).

Petitioner filed the instant habeas action on October 15, 2004 (Doc. 1 at 6).  Respondent concedes that Petitioner's action is timely and that Petitioner has exhausted his state court remedies (Doc. 11 at 3–5, 6, 15, 27, 34).

II.    PLEA COLLOQUY

Because the majority of Petitioner's claims challenge the voluntary nature of his plea, a review of the plea hearing is necessary to evaluate the merit of his claims.

On March 27, 2002, just before the jury was sworn for Petitioner's trial, the trial judge conducted a review of plea offers "on the table" (Doc. 26, Plea Hr'g at 3).  Defense counsel, David Collins, stated that there was no offer on the table; Petitioner had already rejected a prior offer of twenty years (*id.*, Plea Hr'g at 3).  The prosecutor, Jack Poitinger, stated that he would re-extend the offer if Petitioner wished to accept it (*id.*, Plea Hr'g at 4).  In response, the judge commented that the decision whether to plead is a "very, very serious one," confirmed that Petitioner was facing a possibility of life without parole if he was convicted at trial, and offered Petitioner time to speak with his family and his attorney about the offer (*id.*, Plea Hr'g at 4–6).  Collins discussed the plea offer with Petitioner and Petitioner's family, and told the judge that Petitioner wished to proceed to trial (*id.*, Plea Hr'g at 7).  Before proceeding, the judge questioned Petitioner about his rejection of the offer:

> THE COURT: . . . . We reviewed that plea offer.  It was your understanding that it was a twenty year offer on the table for all cases, all counts, concurrent?  That means run everything at one time; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You are how old?

THE DEFENDANT: 22.

THE COURT: 22.  And on a twenty year -- how much time has he ---

MR. COLLINS: He's got about two years in.

THE COURT: All right.  So knock that down, and get with the 85 percent ---

MR. COLLINS: I predict around 16 years.

THE COURT: All right.  Which would then put him out a little past the age of 35.

MR. COLLINS: Yes, sir.

THE COURT: You're at the age right now you're looking at a life expectancy of probably, let's round it out, and say about 75.  That means that you do twenty, take off the two for credit, knock the 85 percent, you're out between the ages of 35 and 36.

If you lose, you're exposed to a situation where at the age of 35 or 36 you're halfway through.  Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now is that your understanding the same as the understanding you had when you were talking with Mr. Collins?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.  In other words, there's no misunderstanding, and he has not withheld any information, or what he has told you is not what we're covering now; is that correct?

THE DEFENDANT: Everything is understood

(*id.*, Plea Hr'g at 7–9).

During his opening statement, Poitinger summarized the State's evidence.  At 3:00 a.m. on August 30, 2000, the victim was sexually assaulted and robbed by a black male, who took her purse and jewelry; the victim was severely beaten during the assault, and she could not accurately describe her assailant (*id.*, Plea Hr'g at 31–35).  Not long after the assault, an officer saw Petitioner driving near the crime scene but did not stop him (*id.*, Plea Hr'g at 36).  Next, Poitinger stated that two women would testify that, sometime after 3:00 a.m., as they were walking outside, they were approached by a gold Cadillac driven by Petitioner and another man, Cedric Russell (*id.*, Plea Hr'g at 39).  The women got in the car, and Petitioner began to discuss a plan to go to Walmart with a

stolen driver's license and credit card (*id.*, Plea Hr'g at 40).  Petitioner told one of the women to use the credit card to obtain televisions and VCRs from Walmart (*id.*, Plea Hr'g at 40).  While in Walmart, the women became scared because the two men were watching them, so they took the credit card and license to the cashier (*id.*, Plea Hr'g at 40).

The cashier called the police, who went to the Walmart and apprehended Petitioner and Russell (*id.*, Plea Hr'g at 37–38).  Officers found the victim's earrings in Petitioner's pocket and found the victim's keys inside the Cadillac (*id.*, Plea Hr'g at 38–41).  At the police station, an officer overheard Petitioner tell Russell that somebody needed to go to Petitioner's car, a Toyota Camry, and remove something from the car (*id.*, Plea Hr'g at 43).  The victim's necklace and bracelet were later found in Petitioner's Camry (*id.*, Plea Hr'g at 43).  Russell used the victim's credit card to buy gas, and after Russell was transported to the police station, the transporting officer found the victim's ring in the back seat where Russell had been sitting (*id.*, Plea Hr'g at 43–44).  Russell told the police that he got the ring from Petitioner (*id.*, Plea Hr'g at 44).  On the other hand, Petitioner told officers that he got everything from Russell (*id.*, Plea Hr'g at 44).

At the station, police took a swabbing of blood found on Petitioner's shin, penile swabbings from both men, and swabbings of both mens' right and left hands (*id.*, Plea Hr'g at 42).  DNA testing revealed that the blood on Petitioner's shin belonged to the victim (*id.*, Plea Hr'g at 45).  Swabbings taken from Petitioner's penis and hands revealed a mixture of DNA from Petitioner and the victim (*id.*, Plea Hr'g at 45).

In the opening statement for the defense, Collins made three points.  First, he emphasized that the victim had been unable to clearly identify her attacker, because she blacked out during the assault (*id.*, Plea Hr'g at 46–47).  Next, Collins stated that there was as much incriminating evidence against Russell as against Petitioner, but Russell had been offered a "sweetheart deal" to testify against Petitioner (*id.*, Plea Hr'g at 47–48).  Poitinger objected to this statement, and at sidebar the judge overruled Poitinger's objection but told Collins that admitting that Russell was a principal or accessory to armed robbery was the same as admitting Petitioner's participation in those crimes (*id.*, Plea Hr'g at 49–52).  The judge stated that he wanted to ensure that Petitioner was aware of and in agreement with the line of defense that inculpated him in the robbery (*id.*, Plea Hr'g at 50, 52).

Finally, Collins told the jury that DNA evidence carried with it a possibility of an erroneous match (*id.*, Plea Hr'g at 55).

After opening statements, the judge gave the jury a fifteen-minute break and held a conference with Petitioner and both attorneys (*id.*, Plea Hr'g at 57–64). During the conference, the judge stated that he had "some real serious concerns about what I've heard thus far" and commented on the strength of the State's evidence and the relative weakness of Petitioner's case (*id.*, Plea Hr'g at 58–59). The judge asked Petitioner if he concurred in Collins's defense strategy and his concession that Russell was a principal to the crimes (*id.*, Plea Hr'g at 58). Pointing out that Petitioner's best argument was that the victim could not make an eyewitness identification, the judge stated that he wanted to ensure that Petitioner was willing to "bet[] his life on that" (*id.*, Plea Hr'g at 59–60). The judge continued,

> THE COURT: . . . . I'm hearing DNA, . . . I'm hearing jewelry, I'm hearing credit cards, . . . I'm hearing driver's licenses, . . . I'm hearing VCR's and videotapes.
>
> I need to make sure that he is making these decisions soundly and wisely under no pressure or anything from any source, just put bluntly. Because it's his life. I mean, this is a life felony.
>
> MR. COLLINS: Judge, do you want to inquire further? I don't know how to respond.
>
> THE COURT: I want you to explain to him the vulnerability of the Cedric Russell involvement and what principal and accessory, the vulnerability. I'm not saying that that's tacitly an admission, but it's vulnerable to that argument.
>
> I want to make sure he understands it, and that if he's going to have to attack the credibility of Cedric Russell, and it's going to be on this is a sweetheart deal, to attack the credibility of Cedric Russell that is virtually a concession that it's a sweetheart deal to Cedric Russell's participation in what they did together.
>
> And I need to make sure on record that he says yeah, I understand that, and yep, I agree with that.
>
> MR. COLLINS: Your Honor, to necessarily answer that, I would need a few more moments with my client.
>
> THE COURT: The words right out of my mouth is you certainly can retire to that side room over there and talk with your client. I want you and him, period, paragraph, that's it, with a bailiff, of course, in attendance.

MR. COLLINS: Yes, sir.  And, Your Honor, I do appreciate the Court's concern.  However, I must put for the record that at this point in time there has been no evidence presented to the jury yet.

And I understand the Court's concern, and I respect that.  And because of that, and because I have not revealed, other than in my opening statement what I anticipate our strategy to be, we're in a position now that the Court's characterized this case basically as he has had no defense, and if there was a subsequent plea to be rendered, I would be highly suspect of its free and voluntary nature, unless there was one heck of a colloquy done, because of the circumstance [Petitioner] finds himself in at the trial with the Court's understanding and concern about him as being one that he feels he has no choice but to plea.  And I just want that on the record.

. . . .

(THEREUPON, A RECESS WAS TAKEN)

THE COURT: All right.  Where are we, Mr. Collins?

MR. COLLINS: Your Honor, after -- I want the record to reflect that the Court has given us unlimited time almost to discuss this matter.  And after [Petitioner] consulting with his mother, with myself, and unusually with the State Attorney, the State has tendered a plea offer, which is below the minimum that the criminal punishment code ---

THE COURT: Wait a minute.  Excuse me.  Have we got witnesses in the courtroom?

MR. POITINGER: Judge, I was informed that we are going to take a plea, Judge.

MR. COLLINS: Yes.  I'm just making the record for the circumstances surrounding the plea in case it ever comes under a subsequent attack.  Okay.

My understanding is the minimum sentence on the criminal punishment code, which this case falls under, is in excess of twenty years.  The State has offered a plea of 19 years with the victim's consent, and has also -- I have informed my client that he will get credit for time he has served, and then the rest, other than that, other than he is under the 85 percent rule, if he conducts himself well and makes himself useful while he's incarcerated, he will serve 85 percent of what is left when that time is deducted.

And we have gone over it, and my client has indicated to me, and I would ask you that you ask him that he is going to plea as charged, accept full responsibility to a negotiated plea of 19 years. . . . .

THE COURT: Okay.  I will go ahead and accept the plea and impose that agreed upon sentence.  Is that correct, sir?

THE DEFENDANT: Yes, sir.

THE COURT: All right.  Fill out the form.

. . . .

MR. COLLINS: We will fill out the form . . . and then we will conduct the colloquy . . . .

MR. COLLINS: . . . . I know you will conduct a very comprehensive colloquy in light of the circumstances in which this plea is taken today.  And I'm not saying they're unusual, but this Court has shown a real concern about [Petitioner's] position and the consequences.

THE COURT: . . . . At this point, I see nothing inappropriate -- in fact, I see great wisdom in taking the plea.  Because as I have expressed, you know, this is not a gambling game where you bet your life.  Okay.  Fill out the form and we'll go.

MR. COLLINS: Okay.

MR. POITINGER: Judge, there will be some matters of restitution and we'll address that.  Additionally, there's going to have to be a DNA blood draw and sexual predator designation.

THE COURT: Shot what now?

MR. POITINGER: Sexual predator designation, DNA blood draw.

THE COURT: That's the standard stuff.  Okay.  All right.  Let's go ahead and fill out the form, Mr. Collins, and we'll proceed with the colloquy.

(THEREUPON, A RECESS WAS TAKEN)

THE COURT: All right.  Come to the center microphone.  We've had quite a number of conversations.  My understanding is that [Petitioner] will be entering a what we call a straight-up plea as charged, with the understanding that in Count 1, sexual battery involving serious physical force, a life felony, it will be 19 years, with credit for how many days, Madam Clerk?

CLERK: 574.

THE COURT: 574 days.  Concurrently with Counts 2 and 3.  One is a second-degree, one is a third-degree, but those will be two five-year sentences concurrent with each other, concurrent with Count 1.

And then on Count 4, the petit theft count, it would be 364 days and 364 days of credit and eliminating that one.

MR. COLLINS: Yes, sir.

THE COURT: So that on all three felony counts, and indeed the misdemeanor count, it would be a concurrent sentence, credit for time served, and adjudication.  Then of necessity there would be the usual requirements under law of designation, I think, which would require registration at a later date, and the DNA samples, which are now required.  Is that correct?

MR. COLLINS: Yes, sir.

THE COURT: And Mr. Jefferson, would you raise your right hand, please, sir.

(THEREUPON, THE DEFENDANT WAS DULY SWORN.

THE COURT: Okay. I've just outlined what the proposed disposition of the case is and the plea. I want to make sure, starting off, there are certain things I need to ask you questions, so that I can be satisfied that this has been given the deliberative process that it deserves and should be.

As I said earlier today, the important decisions that are made in these courtrooms aren't made by judges, they're made by people who are standing where you are, and there are certain things I need to know about your decision process.

Starting off with, is what I have just reviewed the same as what you have discussed with Mr. Collins, your lawyer?

. . . .

THE DEFENDANT: Yes, sir.

THE COURT: . . . . And is it consistent with your understanding of what is to take place?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And that might sound a little odd, but that's -- sometimes we get somebody who does a double take, well, wait a minute, that wasn't what I understood. So before we even get further, I want to make sure that what I reviewed is the same things that Mr. Collins reviewed, and it's the same thing that you understand is going to take place. That's all consistent and fits, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: . . . . When you enter a plea, several things don't happen. One of the things that doesn't happen is that we do not continue further with the trial that's already been undertaken. You have the right to proceed with that, but when you enter a plea you waive that right. Do you understand that? That means, the trial part of this case is now going to be over. Are you aware of that?

THE DEFENDANT: Yes, sir.

THE COURT: Our court processes are comprised of two levels. We have a trial court level, we have an appellate court level. I'm a trial judge. And this is the trial court level. Oversimplified perhaps is that the appellate level reviews what I do to make sure that it's done correctly. . . .

When you enter a plea, you give up your right to have an appeals court review this case, with two exceptions. The first exception is, if I should impose an illegal sentence, that's a sentence that the law doesn't even provide for, or if I should

do anything else that I don't have the authority to do, exceed my jurisdiction.  But other than that, when you enter a plea, you waive your appeal rights except for an illegal sentence or the Court exceeding its jurisdiction.

> Bottom line is, no more trial, no more appeal.  Do you understand that?

> THE DEFENDANT: Yes, sir.

> THE COURT: I think the record would be amply supported that you've had an adequate opportunity to review all of this with your attorney, Mr. Collins; is that correct?

> THE DEFENDANT: Yes, sir.

> THE COURT: All right.  Do you need to discuss anything further with him?

> THE DEFENDANT: No, sir.

> THE COURT. All right.  I want to make sure, this your decision; is that correct?

> THE DEFENDANT: Yes, sir.

> THE COURT: All right.  I find that the plea is entered knowledgeably, voluntarily, intelligently and that there is a factual basis to support the charges found in the probable cause affidavit.

> Therefore, I'll go ahead and accept the plea. . . . .

(*id.*, Plea Hr'g at 62–72).

III.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law,
>        as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented
>        in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in

Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test

in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied—the state court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

Id., 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed.

2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any

issue raised in a federal habeas petition upon which there has been an adjudication on the merits in

a formal state court proceeding. See Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002);

Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002).  First, the court must ascertain the

---

[1]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the
Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529
U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices
Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at
1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Id. (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir.

2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

      A.    Ground one: Petitioner's plea of guilty was unlawfully induced by threats of the trial Judge and was therefore involuntarily made

(Doc. 1 at 4).  Petitioner contends that the trial judge improperly influenced his decision to take a plea by initiating plea negotiations and threatening to sentence Petitioner to the maximum if he proceeded to trial (*id.*).

      1.    Clearly Established Supreme Court Law

The test for determining the validity of a guilty plea is whether the plea represents an voluntary and intelligent choice among the alternative courses of action open to a defendant.  North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970) (citing Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969)).  A "'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper.'"  Bousley v. United States, 523 U.S. 614, 619, 118 S. Ct. 1604, 1609 (1998) (ellipses omitted) (quoting Brady v. United States, 397 U.S. 742, 744, 90 S. Ct. 1463, 1466 (1970)).

A plea of guilty is considered intelligently made if the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available.  *See* Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2258, 49 L. Ed. 2d 108 (1976); Stano v. Dugger, 921 F.2d 1125, 1142 (11th Cir. 1991).  This includes that the defendant be informed regarding the range of punishment that he might receive.  Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994) (citing Boykin, 395 U.S. at 241–42).  The accused must also knowingly waive constitutional rights to which he would otherwise be entitled, "including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers."  Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *see also* Boykin, 395 U.S. at 243 & n.5.

      2.    Federal Review of State Court Decision

Petitioner contends that the trial judge initiated plea negotiations and during negotiations threatened to sentence Petitioner to the maximum if he proceeded to trial (Doc. 1 at 4).  Petitioner raised this claim in his Rule 3.850 motion (Doc. 12, Ex. D at 5–6).

In its written decision denying Petitioner's claim, the state court made several factual findings.  First, it found that the judge did not initiate plea negotiations but rather, as a matter of procedure before swearing in a jury, conducted a review of what plea offers were on the table (*id.*, Ex. H at 2; *see also* Doc. 26, Plea Hr'g at 3).  Next, the state court found the trial judge correctly stated the maximum penalty (life) that could be imposed for the charged offenses and wanted the record to reflect Petitioner's understanding of his decision to proceed to trial (Doc. 12, Ex. H at 2; *see also* Doc. 26, Plea Hr'g at 3–10).  Third, after opening statements, the judge gave the jury a fifteen-minute break and held a conference with Petitioner and both attorneys regarding the strength of the State's evidence and Petitioner's understanding of, and agreement with, the defense strategy (Doc. 12, Ex. H at 2; *see also* Doc. 26, Plea Hr'g at 57–64).  The judge wanted to ensure that Petitioner understood the potential evidence against him; that he understood the defense strategy, including the fact that attacking the credibility of his co-defendant by emphasizing that the co-defendant received favorable treatment from the State regarding his participation in the crimes  may expose Petitioner to liability based on a principal or accessory theory of liability; that Petitioner agreed with that strategy; and that he wanted to proceed (Doc. 12, Ex. H at 2; *see also* Doc. 26, Plea Hr'g at 62).  The judge gave Petitioner time to consult with his counsel and to consider the State's renewed plea offer (Doc. 12, Ex. H at 2; *see also* Doc. 26, Plea Hr'g at 64–65).  Finally, the state court found that based on the evidence mentioned by the State in opening statements and the judge's comments regarding that evidence, Petitioner decided that entering a plea would be in his best interests (Doc. 12, Ex. H at 2; *see also id.*, Ex. B at 2; Doc. 26, Mot. Hr'g at 23).

Based on these factual findings, the state court concluded, as a matter of law, that there was no undue coercion by the judge that resulted in Petitioner's decision to enter a plea, and that Petitioner knowingly and voluntarily entered his plea (*id.*, Ex. H at 2).

Initially, this court defers to the trial court's factual findings, as Petitioner has not shown by clear and convincing evidence that those findings are unreasonable.  *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for

relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.").  Next, although the trial court did not specifically cite to any Supreme Court cases, in making its finding of law, it evaluated whether Petitioner's plea was entered knowingly and voluntarily.  This is the same legal standard set out by the Supreme Court in <u>Alford</u>.  Therefore, the court applied the correct legal rule based on Supreme Court precedent.  The remaining issue is whether the trial court's denial of Petitioner's due process claim resulted in an unreasonable application of Supreme Court law.

Initially, the court notes that Petitioner has not alleged that his plea was not intelligently made: he does not allege that he did not understand the nature of the charges against him, the factual basis underlying the charges, the legal options and alternatives that were available, or the constitutional protections he was waiving.  Moreover the court notes that under Florida law, state court judges are not prohibited from engaging in plea negotiations.  <u>Burkett v. State</u>, 400 So. 2d 138 (Fla. 5th DCA 1981); *see* Fla. R. Crim. P. 3.171; <u>Goins v. State</u>, 672 So. 2d 30, 31 (Fla. 2006) ("There are many varieties of plea agreements.  Negotiations often take place between the state and the defendant, although in some instances the trial judge participates in the negotiations.").  Thus, in the instant case, the trial judge's participation in the plea discussions is not an issue; the only issue is whether the judge's statements and participation coerced or improperly pressured Petitioner to plead guilty.

Petitioner's plea is not rendered involuntary simply because he felt pressure from the judge, his counsel, and his family.  It is well recognized that some pressure will inevitably be exerted on criminal defendants by prosecutors, judges, their own attorneys, and family members  during the plea bargaining process.  *See, e.g.*, <u>Miles v. Dorsey</u>, 61 F.3d 1459, 1468–71 (10th Cir. 1995) (pressure from prosecution, family members, and own counsel did not invalidate guilty plea); <u>Caudill v. Jago</u>, 747 F.2d 1046, 1049–51 (6th Cir. 1984) (guilty plea not involuntary where trial judge told defendant on day before trial that court would not hesitate to impose death penalty); <u>Lunz v. Henderson</u>, 533 F.2d 1322, 1327 (2d Cir. 1976) (no undue coercion in "strong urging" from counsel and defendant's sister).

Similarly, Petitioner's plea is not rendered involuntary simply because he faced a difficult choice between taking the plea and proceeding to trial and possibly receiving a longer sentence. Every defendant involved in plea negotiations suffers the threat of conviction (often of greater charges or with a greater penalty) and must face such "difficult choices." *See e.g.*, Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 668, 54 L. Ed. 2d 604 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'") (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 31, 93 S. Ct. 1977, 1985, 36 L. Ed. 2d 714 (1973)); Brady, 397 U.S. at 751–52, 90 S. Ct. at 1470–71 (guilty plea constitutionally valid even though "motivated by defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged).

In the instant case, the record of the plea hearing reflects that the judge did not unduly pressure Petitioner. The judge did not make any threats, misrepresentations, or improper statements. Rather, the judge commented on the strength of the State's case and correctly stated the maximum penalty that could be imposed if Petitioner were convicted. The judge sought to ensure that Petitioner understood the potential evidence against him; that he understood the defense strategy, including the tenuous position of impeaching his co-defendant with the fact that the co-defendant received favorable treatment from the State regarding his participation in the crimes, without admitting a basis for Petitioner's liability as a principal or accessory; that Petitioner agreed with that defense strategy; and that he wanted to proceed with the trial. Petitioner does not allege that the judge's comments included misrepresentations of the evidence described in the attorneys' opening statements or misrepresentations of the law; nor does Petitioner assert that the judge was motivated by anything but a desire to ensure that Petitioner was fully informed of the consequences of going to trial. Even though the judge commented that the State's evidence appeared strong, the comment did not rise to the level of coercion. Furthermore, after the judge's comments, Petitioner discussed his options with his attorney and his family before making the decision to plead nolo contendere.

This private, independent consultation, which occurred after the judge's comments and before Petitioner entered his plea, diminished any influential effect the comments may have had.

In light of the state court record and the Rule 3.850 court's factual findings, this court cannot conclude that the Rule 3.850 court's conclusion—that Petitioner entered his plea knowingly and voluntarily—was an unreasonable application of Supreme Court law.

B.    Ground two: Petitioner's plea of guilty was entered involuntarily based upon the misrepresentation of his attorney regarding the minimum sentence available under the sentencing guidelines

(Doc. 1 at 4).  Petitioner alleges that his attorney misadvised him of the mandatory minimum sentence applicable to his charges; namely, that his attorney advised him that the mandatory minimum was twenty years, but in fact it was twelve years (*id.*).

1.    Clearly Established Supreme Court Law

When a petitioner challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies.  Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  To obtain relief under Strickland, a petitioner must establish (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688, 104 S. Ct. at 2064, 2068.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Strickland, 466 U.S. at 697.

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  Strickland, 466 U.S. at 688.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known

> unless witnesses are examined and cross-examined in court.  Even then the truth will
> often be in dispute.  In the face of  unavoidable uncertainty, the defendant and his
> counsel must make their best judgment as to the weight of the State's case.  Counsel
> must predict how the  facts, as he understands them, would be viewed by a court . . . .
> Questions like these cannot be answered with certitude; yet a decision to plead guilty
> must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving
> trial entails the inherent risk that the good-faith evaluations of a reasonably
> competent attorney will turn out to be mistaken either as to the facts or as to what a
> court's judgment might be on given facts.  That a guilty plea must be intelligently
> made is not a requirement that all advice offered by the defendant's lawyer withstand
> retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

Therefore, to succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland,

466 U.S. at 690.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating

prejudice is high.  Strickland, 466 U.S. at 693.  The Supreme Court has cautioned that "'[i]t is not

enough for the defendant to show that the errors had some conceivable effect on the outcome of the

proceeding.'"  Id.  However, the Court has also clarified that a petitioner need not demonstrate it

'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the

outcome.  Id. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been different.  A
> reasonable probability is a probability sufficient to undermine confidence in the
> outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state

court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the

evidence.  Williams v. Taylor, 529 U.S. at 405–406.

2. Federal Review of State Court Decision

Petitioner contends that his attorney misadvised him of the mandatory minimum sentence

by advising him that the mandatory minimum was twenty years, but in fact it was twelve years (Doc.

1 at 4).  Petitioner contends that if counsel had properly advised him that the mandatory minimum

was 12 years, he would have gone to trial instead of accepting the plea (*id.*).  Petitioner raised this claim in his Rule 3.850 motion (Doc. 12, Ex. D at 7–8).

In its written decision denying Petitioner's claim, the state court made several factual findings.  First, it found that at the evidentiary hearing held on Petitioner's Rule 3.850 motion, Petitioner testified that he entered the plea because of pressure from the judge and not because of what he thought was the minimum sentence under the Criminal Punishment Code (*id.*, Ex. H at 3; *see also* Doc. 26, Mot. Hr'g at 79).  Petitioner's defense counsel also testified that Petitioner did not enter the plea based on his understanding of the minimum sentence (Doc. 12, Ex. H at 3; *see also* Doc. 26, Mot. Hr'g at 50).  Additionally, the state court found that the transcript of the plea hearing demonstrates that Petitioner entered the plea based on the maximum sentence of life he could receive if found guilty at trial after taking into consideration the state's evidence (Doc. 12, Ex. H at 3; *see also* Doc. 26, Plea Hr'g at 28, 38–45).

Based on these factual findings, the state court concluded, as a matter of law, that because there was "no conclusive evidence that [Petitioner] in fact relied solely upon the minimum sentence under the Criminal Punishment Code in electing to enter his plea, he is not entitled to any relief on his claim" (Doc. 12, Ex. H at 3).

Initially, this court defers to the trial court's factual findings as Petitioner has not shown by clear and convincing evidence that those findings are unreasonable.  *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); Callahan, 427 F.3d at 926.  Next, this court must decide whether the state court's denial of Petitioner's claim was contrary to or an unreasonable application of clearly established Supreme Court law.  Although the state court did not cite any federal cases in its decision, it articulated the legal standard for analyzing ineffective assistance of counsel claims as two-pronged:  (1) Petitioner must show that counsel's performance was deficient, and (2) Petitioner must show that he was prejudiced by counsel's error (Doc. 12, Ex. H at 4).  However, in applying the prejudice prong to this claim, the state court required Petitioner to present "conclusive" evidence that he "in fact relied solely" on counsel's advice regarding the mandatory minimum sentence, and this requirement may have imposed a higher standard that Strickland's "reasonable probability of a different outcome" standard.  Therefore, this court will conduct a de novo review of this claim.

Regarding the first prong of the <u>Strickland</u> analysis, Petitioner must show that no competent counsel would have taken the action that his counsel took.  Petitioner's counsel testified at the evidentiary hearing that after opening statements, he realized that "there was a better than good probability [Petitioner] was going to be found guilty and get more years than he ever wanted to think about" (Doc. 26, Mot. Hr'g at 45).  Thus, counsel advised Petitioner that he should take the plea offer of nineteen years, because he was likely facing a life sentence if he proceeded to trial (*see id.*, Mot. Hr'g at 46).  Counsel also advised Petitioner that the offer of nineteen years was below the minimum sentence, which counsel believed to be twenty years (*id.*, Mot. Hr'g at 28).  On the day of the plea, counsel had not received a sentencing scoresheet from the State, and he had not yet prepared one himself, because Petitioner wanted to proceed to trial rather than accept a plea (*id.*, Mot. Hr'g at 25–26, 48).  Counsel testified that he was more concerned with the maximum that the judge might impose if Petitioner were convicted than with the minimum guideline sentence (*id.*, Mot. Hr'g at 28).

Based on the state court record, this court cannot conclude that counsel's performance was not "reasonable considering all the circumstances" or that counsel committed "serious derelictions" of his duty.  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Indeed, the record reveals that counsel fulfilled his responsibility to investigate and evaluate Petitioner's options in the course of the legal proceedings and to advise Petitioner as to the merits of each.  *Id.* at 1152; *see also* <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam) ("[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.").  After hearing the State's evidence during opening statements, and at the judge's insistence that Petitioner consider a plea, counsel had limited time to advise his client regarding his options: accept the plea or proceed to trial.  The record reveals that counsel did in fact advise Petitioner that Petitioner should accept the plea offer of nineteen years rather than face a likely life sentence.  Finally, counsel did not commit a "serious dereliction" of his duty by failing to prepare a scoresheet prior to the beginning of trial, since Petitioner had planned to proceed to trial

and neither counsel nor Petitioner were anticipating that Petitioner would take a plea that day. Therefore, Petitioner has not met the first prong of <u>Strickland</u>.

Even assuming that counsel should have prepared a scoresheet before advising Petitioner about his options, Petitioner cannot show prejudice.  Petitioner has not come forth with any objective evidence showing that but for counsel's errors, he would not have accepted the plea offer and would have gone to trial.  *See* <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991).  Indeed, the Rule 3.850 court found, and the record supports, that Petitioner stated that he entered the plea because of pressure from the judge and the possibility of a life sentence, not because of Petitioner's understanding of the minimum sentence. Further, in his pleadings in the instant case, Petitioner emphasizes the pressure he felt from the trial judge and that he felt that he "was facing a whole lot of time if he proceeded [to trial]" (Doc. 15 at 3) (alteration in original).  Petitioner's conclusory, after-the-fact statements that he would not have taken the plea offer or that he would have received a less harsh sentence had he proceeded to trial are insufficient to satisfy the second prong of <u>Strickland</u>.  *See* <u>United States v. Gordon</u>, 156 F.3d 376, 380–81 (2d Cir. 1998); <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993); <u>Diaz</u>, 930 F.2d at 835; <u>Toro</u>, 940 F.2d at 1068; <u>Key v. United States</u>, 806 F.2d 133, 139 (7th Cir. 1987).

Accordingly, Petitioner has failed to show that his counsel's performance was deficient, or if it was deficient, that Petitioner would not have accepted the plea offer but for the deficient performance.  Therefore, Petitioner's ineffective assistance of counsel claim is without merit.

C.    <u>Ground three: Petitioner's plea of guilty was entered involuntarily based upon the misrepresentation of his attorney regarding the amount of time in prison he would serve</u>

(Doc. 1 at 5).  Petitioner asserts that his attorney affirmatively misinformed him that he would serve only twelve years in prison after credit was awarded; in fact, Petitioner will serve more than fourteen years in prison (*id.*).

1.    <u>Clearly Established Supreme Court Law</u>

The <u>Strickland</u> standard for challenges to a plea based upon allegations of ineffective assistance of counsel is set forth *supra* Section IV.B.1.

2.    <u>Federal Review of State Court Decision</u>

Petitioner contends that his plea was involuntarily entered because his attorney misinformed him that he would serve only twelve years in prison after sentence credit was awarded (Doc. 1 at 5). Petitioner raised this claim in his Rule 3.850 motion (Doc. 12, Ex. D at 9–12).

In its written decision denying Petitioner's claim, the state court found that at the evidentiary hearing, defense counsel testified that Petitioner was informed he could serve as little as eighty-five percent of the nineteen year sentence and that no promises were made that he would in fact serve only eighty-five percent of the full nineteen year term or that he would serve only twelve years (Doc. 26, Ex. H at 3; *see also* Doc. 26, Mot. Hr'g at 29–31). Based on this testimony and the transcript of the plea hearing, the state court found as a matter of law that Petitioner failed to sustain his burden warranting relief on his claim (Doc. 26, Ex. H at 3).

Initially, this court defers to the trial court's factual findings as Petitioner has not shown by clear and convincing evidence that those findings are unreasonable. *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); Callahan, 427 F.3d at 926. Next, this court must decide whether the state court's denial of Petitioner's claim was contrary to or an unreasonable application of clearly established Supreme Court law. As discussed *supra*, although the state court did not cite any federal cases in its decision, it correctly identified deficient performance as one of the elements that Petitioner must satisfy to succeed on his ineffective assistance of counsel claims. Therefore, this court must defer to the state court decision unless review of the record shows that decision to be unreasonable. *See* Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

Petitioner's allegation, that his counsel told him that he would serve only twelve years if he accepted the plea, is contradicted both by the plea hearing transcript and the Rule 3.850 court's findings. The plea hearing transcript shows that when the judge first asked the parties about pending plea offers, defense counsel stated that there had been an offer of twenty years (Doc. 26, Plea Hr'g at 8). After reducing that sentence by almost two years for time served and stating that Petitioner could serve as little as eighty-five percent of the remaining sentence, counsel predicted that Petitioner could serve about sixteen years (*id.*, Doc. 26, Plea Hr'g at 8). When Petitioner decided to enter a plea, his counsel stated on the record that there would be a sentence of nineteen years, and that after the sentence was reduced by time served, Petitioner could serve as little as eighty-five

percent of it (*id.*, Doc. 26, Plea Hr'g at 65).  Further, the state court found that Petitioner was informed  he could serve as little as eighty-five percent of the nineteen year sentence and that no promises were made that he would in fact serve only eighty-five percent of the full nineteen years.

Based on the record and the state court's findings, Petitioner cannot satisfy the first prong of <u>Strickland</u>, because it is clear that Petitioner's counsel correctly advised him regarding the length of his sentence (nineteen years), the fact that the sentence would be reduced by any time already served, and the fact that Petitioner could serve as little as eighty-five percent of his sentence.  *See* <u>Stano</u>, 921 F.2d at 1152.  Thus, counsel's performance was not deficient, and Petitioner has not met his burden under <u>Strickland</u>.  Accordingly, Petitioner's ineffective assistance of counsel claim is without merit, and the state court did not contrarily or unreasonably apply clearly established Supreme Court law when it denied Petitioner's claim.

        D.      <u>Ground four: Petitioner was denied effective assistance of counsel where trial counsel failed to file a pretrial motion to suppress evidence</u>

(Doc. 1 at 5).  Petitioner asserts that his trial counsel failed to file a motion to suppress Petitioner's confession, which was obtained contrary to Petitioner's right to remain silent (*id.*).  Petitioner states that he would have gone to trial had the evidence been suppressed (*id.*).

        1.      <u>Clearly Established Supreme Court Law</u>

The <u>Strickland</u> standard for challenges to a plea based upon allegations of ineffective assistance of counsel is set forth *supra* Section IV.B.1.

        2.      <u>Federal Review of State Court Decision</u>

Petitioner contends that his plea was involuntarily entered because his attorney failed to file a motion to suppress Petitioner's confession (Doc. 1 at 5).  Petitioner raised this claim in his Rule 3.850 motion (Doc. 12, Ex. D at 12–15).

In its written decision denying Petitioner's claim, the state court made several factual findings.  First, it found that at the evidentiary hearing, Petitioner testified that he believed certain physical evidence was subject to suppression because he had invoked his right to remain silent, but Petitioner never provided any evidence that sufficient grounds existed to suppress the evidence (Doc. 12, Ex. H at 4; *see also* Doc. 26, Mot. Hr'g at 70, 84).  Next, the state court found that trial

counsel testified at the evidentiary hearing that it was his trial strategy to wait until the prosecution sought to admit the evidence at trial before challenging its admissibility (Doc. 12, Ex. H at 4; *see also* Doc. 26, Mot. Hr'g at 31–34).  The state court also determined that moving to suppress evidence during trial is a permissible procedure under state law (Doc. 12, Ex. H at 4 (citing <u>State v. Gaines</u>, 770 So. 2d 1221 (Fla. 2000)).

Based on this testimony and the transcript of the plea hearing, the state court found as a matter of law that Petitioner's counsel did not perform deficiently (Doc. 26, Ex. H at 4).

Initially, this court defers to the trial court's factual findings as Petitioner has not shown by clear and convincing evidence that those findings are unreasonable.  *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); <u>Callahan</u>, 427 F.3d at 926.  Furthermore, this court must accept the state court's legal finding that moving to suppress evidence during trial is permissible, because it was a finding based on state law.  "[S]tate courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law.   <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted); <u>Herring v. Secretary</u>, 397 F.3d 1338, 1354–55 (11th Cir. 2005); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983).

Next, as discussed *supra*, although the trial court did not specifically cite to any Supreme Court cases, in making its findings of law, it evaluated whether Petitioner's counsel performed deficiently, and this is the first prong of the <u>Strickland</u> analysis.  Therefore, the court applied the correct legal rule based on Supreme Court precedent.  The remaining issue is whether the trial court's denial of Petitioner's ineffective assistance of counsel claim resulted in an unreasonable application of <u>Strickland</u>.

Under the first prong of the <u>Strickland</u> analysis, Petitioner must show that no competent counsel would have taken the action his counsel did take.  Petitioner admits that, until the time he actually entered the plea, he wanted to proceed to trial and did not intend to take a plea. Accordingly, Petitioner's counsel planned to seek suppression of evidence at trial, contemporaneously with the prosecutor's attempt to introduce the evidence, in order to give the State as little notice of the evidentiary challenge as possible (Doc. 26, Mot. Hr'g at 32).  Counsel testified that he did not want to give the State his "exact tactical roadmap" ahead of time (*id.*, Mot. Hr'g at 32).  The state court found that it was counsel's strategy to wait until trial to file a motion

to suppress, and that finding is one of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), which enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991).  Moreover, this court cannot conclude that counsel's tactical decision was unreasonable as a matter of law.  *See* Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462.  Although Petitioner suggests, in hindsight, that he would not have taken the plea if counsel had filed and prevailed on a pretrial motion to suppress, counsel's actions must be evaluated according to counsel's perspective at the time.  Strickland, 466 U.S. at 689.  Since counsel decided as an element of trial strategy to wait to seek suppression of the evidence, and Petitioner does not allege that he gave counsel any indication prior to trial that he intended to enter a plea, counsel's action was not constitutionally deficient.

Petitioner has failed to show that counsel's failure to file a pretrial motion to suppress was deficient performance.  Therefore, the state court did not unreasonably apply Strickland in denying Petitioner's claim.

E.   Ground five: Petitioner's plea of guilty was not made knowingly and intelligently, because Petitioner's attorney failed to inform him of sex offender registration requirements or the Jimmy Ryce Act consequences of his plea

(Doc. 1 at 5B).  Petitioner contends that his attorney never discussed the fact that by pleading guilty to the sexual battery charge, Petitioner would be required to register as a sex offender and would be subject to possible of civil commitment under the Jimmy Ryce Act (*id.*).

1.   Clearly Established Supreme Court Law

The Strickland standard for challenges to a plea based upon allegations of ineffective assistance of counsel is set forth *supra* Section IV.B.1.

2.   Federal Review of State Court Decision

Petitioner contends that his plea was involuntarily entered because his attorney failed to advise him that he would be required to register as a sex offender and he would be subject to possible civil commitment under the Jimmy Ryce Act (Doc. 1 at 5B).  Petitioner raised this claim in his Rule 3.850 motion (Doc. 12, Ex. F at 8–9).

In its written decision denying Petitioner's claim, the state court determined that under state law, the requirement of registration as a sexual offender and possible civil commitment under the

Jimmy Ryce Act are considered collateral consequences of a guilty plea (Doc. 12, Ex. H at 4). Based on this finding, the state court found as a matter of law that Petitioner's counsel was not constitutionally ineffective for failing to advise Petitioner of these consequences (*id.*, Ex. H at 4).

Initially, this court must accept the state court's legal finding that sex offender registration requirements and civil commitment pursuant to the Jimmy Ryce Act are collateral consequences of a guilty plea because it was a finding based on state law.  "[S]tate courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law. Mullaney, 421 U.S. at 691; Herring, 397 F.3d at 1354–55; Carrizales, 699 F.2d at 1055.  Next, this court must decide whether the state court's denial of Petitioner's claim was contrary to or an unreasonable application of Strickland.  In concluding that Petitioner failed to establish deficient performance, the state court applied the first prong of the Strickland standard.  Because the state court applied the correct Supreme Court standard, this court must defer to the state court decision unless it constituted an unreasonable application of Strickland.

Regarding the first prong of Strickland, Petitioner cannot show that his counsel was constitutionally deficient.  The state court found, and Petitioner admits (*see* Doc. 1 at 5B), the fact that sex offender registration and the possibility of civil commitment under the Jimmy Ryce Act are collateral consequences of his guilty plea.  *See also* Smith v. Doe, 538 U.S. 84, 93–94, 123 S. Ct 1140, 1147–48, 155 L. Ed. 2d 164 (2003) (finding that sex offender registration laws are not penal in nature); State v. Partlow, 840 So. 2d 1040 (Fla. 2003) (holding that sex offender registration is a collateral consequence); Watrous v. State, 793 So. 2d 6 (Fla. 2d DCA 2001) (holding that potential civil commitment under the Jimmy Ryce Act is a collateral consequence).  Furthermore, in applying Strickland, the Eleventh Circuit has determined that counsel cannot be found constitutionally deficient for failing to inform a defendant of collateral consequences of entering a plea.  *See* United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985) (holding that counsel is not constitutionally ineffective for failing to inform a defendant of the "collateral consequences" of a guilty plea); Pickard v. Thompson, 170 Fed. App'x 86, 87 (11th Cir. 2006) (same).  Because Petitioner failed to establish that his counsel performed deficiently, the state court decision denying his claim was not an unreasonable application of clearly established Supreme Court law.

Accordingly it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola this 27<u>th</u> day of December 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**